342 So.2d 137 (1977)
Charles VINES, Sr., et al., Appellants,
v.
EMERALD EQUIPMENT COMPANY, a Corporation, et al., Appellees.
No. AA-159.
District Court of Appeal of Florida, First District.
February 15, 1977.
Ralph H. Atwell, Pensacola, for appellants.
Calvin W. Wilson, Pensacola, for appellees.
McCORD, Judge.
This is an appeal from final judgment and an amendment thereto in a suit brought by appellants against appellees for replevin of washateria equipment and for damages for wrongful detention thereof. By the final judgment and amendment, the trial court found that appellees had locked appellants out of the premises leased to appellants by appellees in which the equipment was located and had attempted to impose a self-help lien against such equipment but had failed to exercise due process of law and did not establish a lien alleged by appellees under Ch. 83, Fla. Stat. 1975. The judgment held as follows:

*138 "1. That plaintiffs are entitled to replevin the washateria equipment which is the subject of the replevin complaint filed herein.
2. That plaintiffs shall have and recover possession of the washateria equipment from the defendants upon the posting of a surety bond in an amount commensurate with the continued obligation to protect the defendant, Lessor, based upon the remaining term under the lease."
Appellants have raised two points on this appeal as follows: (1) the trial court, in finding appellants entitled to replevin of equipment, erred in requiring appellants to post a surety bond as a condition precedent to possession and in denying damages to appellants for wrongful detention of the washateria equipment; (2) the trial court erred in denying appellants' counterclaim for judgment and damages against appellees for breach of lease and unlawful eviction. We agree with appellant's contention under both points and reverse.
We feel that we should call attention to the fact that Point 2 presents an unusual pleading situation, which from the record before us does not appear to have been questioned in the trial court and has not been questioned on this appeal. Appellees filed an answer and counterclaim to appellants' complaint, and appellants then filed an answer to the counterclaim and a counterclaim against appellees. We question the propriety of appellants (plaintiffs) filing a counterclaim against appellees (defendants). A plaintiff who, after filing his complaint, wishes to plead an additional cause of action should move for leave to file an amended complaint. Each cause of action alleged by a plaintiff should be stated in his complaint. We know of no authority for a plaintiff to file a counterclaim against a defendant. Since, however, the case went to trial and final judgment without such procedure being questioned, we will not disturb it here.
It appears from the evidence that on January 10, 1971, appellants Vines, Sr., and Vines, Jr., leased a place of business from the Lobster House, Inc. Appellees Thomas and Mary Eversole were principal stockholders and officers of the lessor corporation. For reasons not established here, that lease was terminated, and on September 21, 1971, the same premises were leased by appellees Emerald Equipment Company as lessor to appellant Vines, Jr., and his wife. The Eversoles were also principal stockholders and officers in Emerald Equipment. Vines, Sr., who was a party to the first lease, was not a party to the new lease (the lease with which we are concerned on this appeal). The new lease contemplated that certain expenditures would be made by lessees for alterations and renovations of the premises including a sewer connection fee in the sum of $3,000 to prepare the premises for use as a washateria. The washateria equipment, which is the subject of the replevin suit, was purchased by Vines, Jr., and financed through the First National Bank of Atlanta. A security agreement and financing statement was made to the bank pledging the equipment as security for the loan given for its purchase. Although Vines, Sr., was not a party to this second lease, he assisted his son with the financing and operation. The venture was a failure and a financial drain on both Vines, Jr., and Vines, Sr. Vines, Sr., testified that in July, 1974, he arranged a sale of the equipment to a party in Baton Rouge, Louisiana, for the sum of $18,000 and preparations were made to remove and transport the equipment from Escambia County to the buyer. The lienholder, First National Bank of Atlanta, refused permission for removal of the secured equipment from Florida. Vines, Sr., negotiated a loan from appellant Brookhaven Bank and Trust Company, who paid off the loan of First National, took an assignment of the security agreement and financing statement, and gave Vines Sr., permission to remove and sell the equipment.
Appellant Vines, Jr., testified that on the night of July 9 he went to the washateria, disconnected the equipment and otherwise prepared it for its removal on July 10. On the morning of July 10, appellee Eversole went to the washateria and saw that the *139 equipment had been disconnected. A man from the moving company was there and told Eversole that the equipment was to be taken to Baton Rouge, Louisiana, for sale. Eversole then refused admittance to the mover, changed the locks on the doors, and denied appellants access to the premises. Both Vines, Jr., and Vines, Sr., testified that they intended to continue payment of the rent but wanted to sell the equipment in order to cut down on their financial losses; that only they knew of the proposed sale of the equipment and they did not inform Eversole of it because they were paid up on their rent. Vines, Jr., testified that he had mailed a check dated July 8, 1974, to Eversole for the July rent. Eversole testified that on July 10 he had not received this check and thought that appellants were 10 days in arrears; that he received the check two to four days after the 10th and since held it in his safe.
Although the rent was due on the first of each month, the evidence shows that it was usual for payments to be made anywhere from the first to the 10th of each month. Eversole testified that he assessed no late penalties and took no other action when the rent was late other than to call Vines and inform him of it. Vines, Sr. testified that because of Eversole's action in locking the premises, the proposed sale of the washateria equipment was lost. Appellee Eversole has offered to return the premises to appellant only if appellants would post a security bond to cover their continuing lease obligations. There is no provision in the lease for posting of such bond.
The new lease contains a paragraph entitled "LESSOR'S REMEDIES." This paragraph lists various events, the occurrence of one of which will authorize the lessor to terminate the lease and resume possession of the property. By agreement of the parties, the provisions of the lease for one of these events were stricken and initialed by them. The stricken provision stated as follows:
"Or shall remove or attempt to remove or express or declare an intention to remove any of the goods or chattels from the premises without the expressed consent of the lessor,"
The parties left another provision in the lease which provides as follows:
"That at the expiration of said term, the Lessees may remove all the trade fixtures owned by said Lessees which can be removed without costly injury to or undue defacement of said premises, provided all rents stipulated are paid in full and all damage to said property is promptly repaired."
From the above retained provision of the lease, it appears that it was the parties' intent that trade fixtures of lessees remain on the premises until the termination of the lease and be removed only if all rents were paid in full. It further appears that the paragraph specifying the events which, if they occur, will authorize self-help by lessor does not contain an authorization for self-help if lessee is removing or attempting to remove trade fixtures. By striking the provision relating to removing or attempting to remove goods or chattels, it seems clear that the parties intended that the removal or attempted removal of goods or chattels would not authorize self-help. Washateria equipment obviously better fits the term "trade fixtures" than it does goods or chattels, but be that as it may, the lease does not authorize self-help by lessors upon removal or attempted removal of either. Thus, lessors breached the lease when Eversole changed the locks and barred admittance of appellants and their agents to the premises. There had been no breach of the lease at that time by appellants for nonpayment of rent because the record shows that appellees had waived prompt payment of the rent by their previous regular acquiescence in late payment. 52 C.J.S. Landlord & Tenant § 534. Thus, breach for nonpayment of the rent would not occur until notice and an opportunity to pay up were given by appellees to appellants. The trial court erred in granting replevin to appellants conditioned upon their posting a surety bond and further erred in denying appellants' counterclaim for damages for breach of the lease and unlawful eviction.
*140 Reversed and remanded for further proceedings consistent herewith.
BOYER, C.J., and MILLS, J., concur.