**In re A & R WHOLESALE DISTRIB., INC., Debtor.**

**Bankruptcy No. 97–32052.**

United States Bankruptcy Court, D. New Jersey.

Feb. 9, 1999.

Michael L. Detzky, Law Office of Michael L. Detzky, Freehold, NJ, for Trustee, Michael L. Detzky.

Howard B. Leopold, Dollinger & Dollinger, P.A., Rochelle Park, NJ, for Creditor, Jamco Realty in New Jersey, Inc.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY AND FACTS

On March 2, 1997, Debtor, A & R Wholesale Distributors, Inc. ("Debtor"), filed voluntary petition pursuant to Chapter 7 of the Bankruptcy Code. (*See* Docket Record) Debtor was a privately held corporation engaged in the retail/wholesale business. (*See* Petition) On March 31, 1997, Michael Detzky, Esq. was appointed as the Chapter 7 Trustee ("Trustee"). Thereafter, on August 5, 1997, Jamco Realty in New Jersey, Inc. ("Jamco") filed a proof of claim in the amount of $158,276.31. (*See* Proof of Claim) Jamco characterized its claim as a secured claim because it was based on proceeds of a sale by assignment of the Debtor's personalty and any personalty remaining on its leasehold premises pursuant to N.J.S.A. 2A:19:31. (*Id.*) Jamco maintains that its debt was incurred from August 1995 through February 1997 via lease agreement. (*Id.*) The lease agreement was entered into on November 29, 1991 for a period of five (5) years and nine (9) months commencing on November 1, 1991 and ending on July 31, 1997. (Ex. A to Cert. Opp.) The leased premises consist of a building known as 60 Brunswick Avenue, Edison, New Jersey. (*Id.*) The monthly base rental rate was $12,632.42. The lease is described as an "absolute net lease," whereby the rent reserved under said lease is to be paid to the Landlord without any claim on the part of the Tenant for diminution or abatement. (*Id.*)

Prior to the filing of the petition, the Debtor and Jamco were involved in a state court proceeding involving the subject lease. The Debtor vacated the premises, but left personalty on the site. Jamco asserted a lien against that personalty and arranged for a sale of the goods for the benefit of creditors. Consequently, Jamco asserted a lien against the proceeds of sale pursuant N.J.S.A. 2A:19–31. Thereafter an Order, dated September 20, 1996, was entered by the New Jersey Superior Court, Chancery Division (Probate), Middlesex County, Honorable Alan Rockoff, which order confirmed the sale of Debtor's assets and authorized and directed payment to the auctioneer and appraiser. (*See* Ex. C to Cert. Opp.)

Trustee, on October 2, 1998, filed an objection to Jamco's claim. Trustee argues that Jamco's secured claim, to the extent it arises from a statutory lien, should be avoided pursuant to 11 U.S.C. § 545(3). (Cert. Supp. of Obj.) In addition, Trustee maintains that there is only $53,947.81 in the Trustee's account. (*Id.*) Accordingly, Trustee urges this Court to avoid Jamco's lien because, if it were paid, there would be no funds available to pay other creditors or the cost of administration. Trustee cites no case law in support of this argument.

Conversely, Jamco argues that the Trustee does not have the power to avoid its lien because its lien is judicial, rather than statutory. (*See* Cert. Opp. at 2) Specifically, Jamco contends that its lien is judicial because its lien, which is predicated on rents due from the Debtor–Tenant, was preserved and confirmed by Judge Rockoff's Court Order. (*See* Brief Opp. at 3). Although Jamco concedes its rights to the proceeds arose automatically by statute, N.J.S.A. 2A: 19–31, it contends that it did not have an enforceable lien until the judicial foreclosure proceeding was commenced. (citing *Mascenik v. Ryan*, 6 B.C.D. 763 (D.Colo.1980)).

### DISCUSSION

#### A. Jurisdiction

This court must first determine whether it has subject matter jurisdiction over the various claims and parties. Congress has

vested bankruptcy courts with jurisdiction over four kinds of Title 11 matters: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in Title 11; and (4) proceedings related to Title 11. *See* 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(b)(2)(A), (E), (K) and (O). *See also Donaldson v. Bernstein,* 104 F.3d 547 (3d Cir.1997). The matters before this court clearly involve matters arising under Title 11 pursuant to 11 U.S.C. § 545(3) and (4). Accordingly, this court has subject matter jurisdiction over the Trustee's objection to Jamco's secured claim. To the extent that there is a determination that this is a non-core matter, the within opinion shall constitute proposed findings of fact and conclusions of law and a report and recommendation pursuant to 28 U.S.C. § 157(c)(1).

## B. Nature of Lien

The trustee seeks to avoid Jamco's lien pursuant to 11 U.S.C. § 545 which provides:

> The trustee may avoid the fixing of a *statutory lien* on property of the debtor to the extent that such lien—... (3) is for rent; or (4) is a lien of distress for rent.

11 U.S.C. §§ 545(3) and (4) (emphasis added).

The parties dispute whether the lien satisfies the requirement of section 545 that the lien be statutory.[1] Thus, this court is called upon to characterize the nature of the lien held by Jamco. The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Bankruptcy Code envisions three types of liens: judicial liens; statutory liens; and consensual liens (security interests). *Graffen v. City of Philadelphia,* 984 F.2d 91, 95 (3d Cir.

1992); 9A *Am.Jur.2d Bankruptcy* § 1224 (1991). A security interest is a lien created by an agreement. *See 5 Collier on Bankruptcy,* ¶ 545.01[3], p. 545–5 (citing S.Rep. No. 95–989, 95th Cong., 2nd Sess. 27 (1978)). Since no agreement has been alleged, the lien is either statutory or judicial.

*Statutory Liens*

■ The Code defines a statutory lien as a "lien arising solely by force of statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). *In re Thorogood,* 22 B.R. 725 (Bankr.E.D.N.Y. 1982); 9A *Am.Jur.2d Bankruptcy* § 1617 (1991). Further, the Legislative history indicates that "[a] statutory lien is one that arises automatically and is not based on an agreement to give a lien or on judicial action." See 5 *Collier on Bankruptcy,* ¶ 545.01[3], p. 545–5 (citing S.Rep. No. 95–989, 95th Cong., 2nd Sess. 27 (1978)).

■ In order to constitute a statutory lien, the Third Circuit requires that the lien "arise solely by force of statute." *Graffen,* 984 F.2d at 96. When such criteria are met, a statutory lien's character is not changed by a subsequent administrative act. (*See Graffen,* 984 F.2d at 97) (Case law does "not stand for the proposition that liens requiring some administrative action to be perfected must be characterized as judicial liens." There, a water lien was held to be statutory because the docketing was merely a specified condition for the creation of the lien similar to the prerequisites of a mechanic's lien); *In re Fennelly,* 212 B.R. 61, 65 (D.N.J.1997) ("mere ministerial act of recording the De-

---

1. The court notes that if the lien were one for distress for rent under 11 U.S.C. § 545(4), it necessarily would not be statutory in nature. *In re Kelco Enterprises,* 86 B.R. 471 (Bankr. W.D.Pa.1988); *In re M.A.P.P., Inc.,* 26 B.R.

391 (Bankr.D.Vt.1983); *In re Allegheny Nursing Service, Inc.,* 17 B.R. 594 (Bankr.W.D.Pa. 1982). *See also Norton Bankruptcy Law and Practice 2d* ¶ 55:2 (Callaghan & Co.1998).

partment of Motor Vehicle's lien does not create the requisite legal process or proceeding required to be a judicial lien.").

The Third Circuit recognizes several kinds of statutory liens for purposes of lien avoidance, including mechanics' liens, tax liens, rent liens, water/sewer liens, and liens to collect attorney fees. *See Graffen,* 984 F.2d at 96 (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1978) *reprinted in* 1978 U.S.C.C.A.N.) (Legislative history of the Code indicates that a mechanics' lien can be statutory.). Other jurisdictions have arrived at similar conclusions. *See In re Wisner,* 77 B.R. 395, 397–98 (Bankr.N.D.N.Y.1987) (same); *In re Printcrafters, Inc.* 208 B.R. 968, 976 (Bankr.D.Colo.1997) (attorney liens arise solely by force of a statute upon specified circumstances or conditions, i.e. when attorney has completed compensable work); *In re Ranes,* 31 B.R. 70, 72 (Bankr.D.Colo. 1983) (same).

Some courts, however, have held that the mere fact that a lien is dependent upon a statute is not determinative of whether such lien is statutory for purposes of the Code. *In re Plumlee,* 100 B.R. 304 (Bankr. D.S.C.1989). *See In re Underwood,* 103 B.R. 849 (Bankr.E.D.Mich.1989) (a court must consider a lien's origin instead of the means of enforcing the lien to determine the nature of a particular lien). Further, Collier states, "it is unlikely that in every instance in which a statute provided that a judgment becomes a lien only upon its docketing or recordation that Congress intended that the lien would be a statutory lien." 4 *Collier on Bankruptcy,* ¶ 7.04[3] at 7–22 (Matthew Bender 15th Ed.Rev. 1996).

*Judicial Lien*

■ On the other hand, a "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process" or court-related action. 11

U.S.C. § 101(36). Courts have defined judicial liens as "a charge against or interest in property to secure a payment of a debt." *In re Ashe,* 669 F.2d 105, 107 (3d Cir. 1982), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984). To that end, courts have held that any liens obtained by the judicial or administrative adjudicatory process are judicial liens. *See Ashe,* 669 F.2d at 107–08 (lien obtained by confessed judgment was a judicial lien because its validity and effectiveness required subsequent judicial action); *Gardner v. Com. of Pennsylvania,* 685 F.2d 106 (3d Cir.1982), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982) (public welfare lien on real property of debtor, under a signed public assistance reimbursement agreement containing confession of judgment provisions was judicial lien because the notes were not valid and enforceable until filed as judgments); *see also, In re Barbe,* 24 B.R. 739 (Bankr.M.D.Pa.1982) (overpayment of unemployment compensation was a judicial lien because the lien held by debtor was preceded by an administrative adjudicatory process tantamount to a judicial proceeding); 4 *Collier on Bankruptcy* ¶ 7.04[4], P. 7–34 (Matthew Bender 15th ed. Revised).

## C. Avoidance of Statutory Liens pursuant to § 545

The above standards deal with the difference between judicial liens and statutory liens under the Code in general. Section 545 [2], however, is a special section which directly invalidates any lien for rent and any lien for distress for rent. *Norton Bankruptcy Law and Practice 2d* § 55:2. This treatment of rent liens has historical origins. *Id.* Under the Code:

Landlord lien claims are invalidated by type. Thus, questions of whether the lien has been properly perfected under state law, whether it has validity against

---

**2.** The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—(3) is for rent; or (4) is a lien of distress for rent.

11 U.S.C. § 545 *et seq.*

other claimants outside of property distribution, and whether it can be perfected against third party claimants are not germane. Even assuming favorable answers to each of these questions, statutory and common law landlord liens are avoided under Code § 545.

*Id. See also 5 Collier on Bankruptcy* at ¶ 545.04 (same); *In re Brittain,* 81 B.R. 7 (Bankr.W.D.La.1987) (lessor's privilege on lessee's movable effects on leased premises was statutory lien subject to avoidance); *see also, In re Zaisan,* 80 B.R. 832, 837 (Bankr.S.D.Tex.1987) (property removed pursuant to a distress lien for moving and storage charges owed by debtor was statutory and could be avoided under § 545); *In re Furniture Discount Stores, Inc.,* 11 B.R. 5, 6 (Bankr.N.D.Tex.1980) (holding that landlord's claimed statutory and common law liens for rent were avoidable by § 545 because such liens were liens for rent and/or liens for distress for rent.)

Further, Collier states that a trustee may avoid liens for rent and liens of distress for rent "regardless of whether the lien has been enforced by sale prior to filing the petition." 5 *Collier on Bankruptcy,* (15th Rev.Ed.1996), ¶ 545.04 (citing *H.R.Rep. No.* 95–595, 95th *Cong.,* 1st *Sess.* 371 (1977)).

Accordingly, the majority of cases interpreting 11 U.S.C. § 545(3) have strictly construed the statute; that is, if the lien is for rent or distress for rent, it is avoidable, regardless of when it is incurred.[3]

■ Trustee, not the debtor or a creditor, is the only party who has standing to exercise § 545 powers to avoid a statutory lien. 5 *Collier on Bankruptcy,* (15th Rev. Ed.1996), ¶ 545.01[3]. In the context of a Chapter 11 case, however, a debtor in possession has the standing of a trustee for purposes of exercising avoiding powers pursuant to § 545 for a statutory lien for rent or distress for rent. *Id.* at ¶ 545.04 (citing *In re Tape City U.S.A., Inc.,* 677 F.2d 401 (5th Cir.1982)).

■ In this instance, it is clear that Jamco's lien is a statutory lien grounded upon a landlord's claim for rent and therefore avoidable pursuant to § 545 of the Code. Specifically, this court recognizes that landlords, such as Jamco, could apply to a state court for a judicial lien granting them the right to sell the tenant's property. However, as discussed below, the New Jersey Legislature, pursuant to N.J.S.A. 2A:19–31, has granted landlords, who are owed rent from a tenant, the statutory right to sell that tenant's property left on the premises, without the need of first applying to a court for relief. Jamco availed itself of this statutory remedy. Therefore, the Trustee can rightfully avoid Jamco's statutory lien for rent under § 545(3) of the Code.

## D. Nature of Jamco's lien under state law

Notwithstanding, the Bankruptcy Code's strong statutory language in favor of invalidating landlord's liens, Jamco contends that its lien has been altered from a statutory lien to a judicial lien by virtue of the state court order.

■ The Code gives "very little guidance for distinguishing a judicial lien from a statutory lien other than the ... less lucid definitions ... provided in the Code or in pertinent legislative history." *In re Aikens,* 87 B.R. 350, 353–54 (Bankr. E.D.Pa.1988). As a result, bankruptcy

---

**3.** *Matter of Hilligoss,* 849 F.2d 280, 281 (7th Cir.1988); *Matter of Great Northern Forest Products, Inc. (Boyd v. Dock's Corner Assocs.),* 135 B.R. 46, 56 (Bankr.W.D.Mich.1991); *In re Bistransin,* 95 B.R. 29, 31 (Bankr.W.D.Pa. 1989); *In re Allegheny Nursing Service, Inc. (Moody v. Monroeville Medical Arts Bldg.),* 17 B.R. 594, 597 (Bankr.W.D.Pa.1982); *In re Arnold,* 88 B.R. 917, 919 (Bankr.N.D.Iowa 1988); *In re Brittain (Investors/Country Club Plaza L.P. v. Rodriguez),* 81 B.R. 7, 8 (Bankr. W.D.La.1987); *In re Waldo (Baron v. Waldo),* 70 B.R. 16 (Bankr.N.D.Iowa 1986); *In re Villa Roel, Inc.,* 57 B.R. 879, 882 (Bankr. D.D.C.1985); *In re M.A.P.P.,* 26 B.R. 391, 392 (Bankr.D.Vt.1983); *Matter of KMM Corp. (Beck v. Robb),* 14 B.R. 348, 349 (Bankr. S.D.Fla.1981).

courts, unless there is an overriding federal interest, have looked to state law to determine the nature of property rights, including whether a valid lien exists. *See Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Schreiber v. Kellogg,* 194 B.R. 559, 567 (E.D.Pa.1996), *aff'd in part, rev'd in part,* 124 F.3d 188 (3d Cir.1997); *In re Lewis Energy Corp.,* 36 B.R. 205, 207 (Bankr.D.Col.1983); *In re Spectra Prism Industries, Inc.,* 28 B.R. 397 (Bankr.App. Cal.1983); *In re Computer Room, Inc.,* 24 B.R. 732 (Bankr.N.D.Ala.1982).

In the instant case, Jamco holds its lien by virtue of N.J.S.A. 2A:19–31. N.J.S.A. 2A:19–31, LANDLORD'S LIEN ON ASSIGNOR'S GOODS, provides in relevant part:

> Where the assignor is a tenant, all of his goods and chattels on the premises, in his possession, shall be subject to a lien for the payment of rent due to the landlord. The claim for rent in favor of the landlord, not exceeding 1 year's rent, shall be first paid and satisfied by the assignee out of goods and chattels of the tenant, which were on the demised premises at the time of the assignment.

N.J.S.A. 2A:19–31 (West 1987).

Jamco urges this Court to hold that its lien is judicial. Jamco concedes that its rights did stem from the relevant statute, N.J.S.A. 2A:19–31. It, however, argues that Judge Rockoff's Order, dated 9/20/96, changed the character of the statutory lien to a judicial lien. Specifically, Jamco relies on *Mascenik v. Ryan,* 1980 U.S. Dist. Lexis 17050, 6 B.C.D. 763 (D.Colo.1980). In that case, the court held that trustee may be precluded from avoiding a landlord's lien after the landlord has obtained a default judgment against the Debtor and sold its personal property for non-payment of rent, since the character of the lien changed from a statutory lien to a judicial lien once it was reduced to judgment. *Mascenik,* 1980 U.S. Dist. Lexis at *6. The court further held that the only interest

landlord has is in the judgment. *Id.* at *10. The court noted that the distinction between a statutory lien and a lien, which was initially grounded upon statute, but subsequently changed its character by virtue of resort to the judicial process, comports with the policy behind avoidance powers. *Id.* Specifically, the court reasoned that "to extend the avoidance power to the circumstances presented by this case, would be to provide a windfall to the creditors and unduly penalize the lien holder who has diligently pursued his rights and even obtained and executed upon a judgment prior to the filing of the petition." *Id.* at *10–11. The Debtor cites only one other case in support, *In re Lott,* 196 B.R. 768 (Bankr.W.D.Mich.1996). However, that case only held that an artisan's lien is not a statutory lien as under § 545 because this lien becomes effective upon the completion of the work.

This jurisdiction has not addressed this issue. However, at least one other jurisdiction has addressed it. The court in *In re Mac Lure,* 50 B.R. 134 (Bankr.D.R.I. 1985), held that a landlord's lien on debtor's furniture for expenses incurred in evicting debtors was a judicial lien, rather than a statutory lien. Specifically, the furniture was stored at Consumer's Moving Company, where it was delivered to defendant, district court constable, pursuant to a writ of execution issued against the debtors after a judgment of trespass and ejection action brought by the landlord. *Id.* The landlord refused to release the furniture on the ground that, under state law, R.I.Gen.Laws § 34:18–9.1, he held a nonvoidable statutory lien for expenses incurred in evicting the debtors. *Id.* at 135. The court disagreed with the landlord's characterization of his lien because the state statute did not create a lien automatically without resort to the judicial process. In particular, the court reasoned that, "under present Rhode Island procedure, a landlord wishing to evict a tenant must first institute a summary trespass and ejectment action in state district court."

**622**

*Id.* at 136. Therefore, the court found, in the context of the entire eviction process, it is clear the landlord's lien arose by virtue of judicial proceedings.

This court finds that Jamco's lien is distinguishable from the liens in *Mascenik* and *Mac Lure, supra.* First, Jamco's lien is not grounded upon a default judgment and court order allowing landlord to sell tenant's personalty as in *Mascenik, supra.* Nor is Jamco's lien pursuant to a writ of execution issued to a third party storage warehouse for the release of tenant's furniture for costs associated with eviction proceedings as in *Mac Lure, supra.* To the contrary, N.J.S.A. 2A:19–31, which is the basis for Jamco's lien, automatically and expressly grants a lien in favor of a landlord for the tenants' goods and chattels left on the premises, now in the landlord's possession, for payment of rent due to the landlord. Nowhere in the statute's language does it state that the landlord must first resort to the judicial process for the sale of tenant's chattels and goods for nonpayment of rent. Nonetheless, Jamco argues that Judge Rockoff's Order authorized the sale of those chattels, and therefore it was the judicial process, not the statute, which provided Jamco with an enforceable lien. Upon close examination of the Judge Rockoff's Order, however, this court finds that the order merely confirmed the sale of assets, which was previously conducted on September 17, 1996, pursuant to N.J.S.A. 2A:19–31. In addition, the Order granted compensation to the auctioneer and appraiser. Thus the lien fulfills the statutory requirement that it *arise* solely by force of statute. 11 U.S.C. § 545. Moreover, as indicated by the Third Circuit and District Court for the District of New Jersey, a mere ministerial act of recording the lien, or administrative proceeding does not create the requisite level of legal process or proceeding required to be a judicial lien. *See Graffen* and *In re Fennelly, supra.* In fact, there is an even stronger statutory basis for invalidating a landlord's lien, than the liens in *Graffen* and *In re Fennelly, supra.*

Those cases did not deal with section 545(3) which specifically deals with the type of landlord's lien at issue, and directly invalidates it. Therefore, this court holds that Jamco's lien is a statutory lien, hence subject to avoidance by the Trustee pursuant to § 545 of the Code.

### CONCLUSION

Based on the foregoing, this court finds that Jamco holds a statutory lien based on rent or distress of rent. Thus Trustee can rightfully avoid such lien pursuant to § 545(3). Trustee should submit an Order in accordance with this opinion within ten (10) days.